**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RODERICK ERIC ANDERSON,

                Plaintiff,

                                  Case No. 3:12-cv-308-J-JRK

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Roderick Eric Anderson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "injuries to [his] back and left knee from a fall." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed May 31, 2012, at 136. On October 17, 2008, Plaintiff filed an application for SSI, alleging an onset date of May 1, 2003. Tr. at 104-07. Plaintiff's application was denied initially, see Tr. at 44-46, and was denied upon reconsideration, see Tr. at 49-50.

On September 28, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 25-39. At the time of the hearing, Plaintiff was forty-eight (48) years old. See Tr. at 104 (indicating Plaintiff's date of birth). The ALJ issued a Decision on November 3, 2010, finding Plaintiff not disabled since September

---

      1      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed June 1, 2012; Reference Order (Doc. No. 14), entered June 6, 2012.

24, 2008, the date the application was filed.[2]  Tr. at 20.  On February 8, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.  On March 21, 2012, Plaintiff commenced this action under 42 U.S.C. § 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal.  See Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed August 19, 2012.  First, Plaintiff argues that the ALJ erred by "failing to articulate good cause for not crediting the treating opinion of" Douglas M. Pennington, D.O. ("Dr. Pennington").  Pl.'s Br. at 1.  As part of the first issue, Plaintiff asserts that the ALJ erred in evaluating Dr. Pennington's opinion by assuming that Michael J. Lord's, M.D. ("Dr. Lord('s)") "usage of the term 'sedentary' necessarily meant the same as the definition of 'sedentary' used in the context of [the] Social Security disability regulations."  Id.  Second, Plaintiff contends that the ALJ "erred in failing to articulate good reasons for not crediting [Plaintiff's] testimony and symptoms."  Id.  Third, Plaintiff asserts that the "Step Five nondisability finding is riddled with errors . . . ."  Id.

As to Plaintiff's first issue, the undersigned finds the ALJ committed reversible error in discounting Dr. Pennington's opinion rendered on September 30, 2008 and documented on a "Functional Capacity Questionnaire (Physical)"; therefore, this matter is due to be reversed and remanded for further consideration of that opinion.  Because the matter is due to be reversed and remanded on the first issue, and because the ALJ's further consideration

---

[2]   The only SSI application in the administrative transcript is dated October 17, 2008.  Tr. at 104-07.  The discrepancy in dates is of no consequence to the resolution of this matter.

of Dr. Pennington's opinion on remand may have an impact on the factual findings at which issues two and three are aimed, issues two and three are not addressed. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-20. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since

---

    3    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

September 24, 2008, the application date." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: degenerative joint disease of the left knee, internal derangement of left knee, lumbar strain, and eczema dermatitis in the palms of the hands." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citations omitted).

The ALJ determined Plaintiff "has the residual functional capacity [("RFC")] to perform the full range of sedentary work as defined in 20 CFR 416.967(a)." Tr. at 17 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a truck driver, heavy equipment operator, and retail manager. Tr. at 18 (emphasis and citation omitted). At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," including order clerk and surveillance systems monitor. Tr. at 19 (emphasis and citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . since September 24, 2008, the date the application was filed." Tr. at 20 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."

-4-

Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff raises three issues on appeal; however, as noted above, only the first issue is addressed substantively.  Plaintiff's first issue centers on the September 30, 2008 opinion of Dr. Pennington documented in the "Functional Capacity Questionnaire (Physical)."  See Pl.'s Br. at 8-16.  Plaintiff argues that the ALJ failed to articulate good cause reasons for discrediting Dr. Pennington's opinion.  Id.  Plaintiff contends that in attempting to discount Dr. Pennington's opinion, the ALJ improperly relied on a statement made by Dr. Lord.  See id. at 11-12.  Specifically, says Plaintiff, the ALJ erred by "erroneously presuming that Dr. Lord's

usage of the term 'sedentary' necessarily meant the same as the definition of 'sedentary' used in the context of Social Security Disability regulations." Id. at 1, 8 (emphasis omitted). To place the issue in context, the undersigned summarizes each physician's opinion before analyzing the issue.

### A. Medical Opinions

#### 1. Dr. Pennington

Dr. Pennington treated Plaintiff between September 30, 2008 and July 1, 2009. See Tr. at 130, 261, 263, 308-10, 314. On September 30, 2008, Dr. Pennington documented that Plaintiff had the following medical issues: difficulty walking because of his left knee; marked tenderness in his lumbar spine; positive straight leg raises; a swollen left knee; decreased range of motion in his left knee; and an inability to straighten his left knee. Tr. at 261. Dr. Pennington's "impression/plan" was "chronic back pain" and degenerative joint disease in Plaintiff's knee with "loose fragments." Tr. at 261 (capitalization omitted).

Also on September 30, 2008, Dr. Pennington completed a "Functional Capacity Questionnaire (Physical)." On that form, Dr. Pennington noted that Plaintiff had "multilevel disc dx, internal derrangement [sic] [left] knee." Tr. at 263. He assigned Plaintiff a "poor" prognosis. Tr. at 263. Dr. Pennington checked a box indicating that Plaintiff's impairments had lasted or could be expected to last twelve months. Tr. at 263. Regarding Plaintiff's ability to stand/walk and sit during an eight-hour workday, Dr. Pennington opined that Plaintiff could stand/walk for 0-2 hours total and he could sit for 3 hours total. Tr. at 263. According to Dr. Pennington, Plaintiff would frequently experience "pain severe enough to interfere with attention and concentration needed to perform even simple work tasks." Tr. at 263.

Regarding Plaintiff's signs and symptoms, Dr. Pennington indicated the following: positive straight leg raising test; prescribed cane or other walking device; depression; muscle weakness; and reduced range of motion. Tr. at 263. Dr. Pennington opined that Plaintiff would be absent from work more than four days per month. Tr. at 263. Also on that same date, Dr. Pennington completed an "Application for Disabled Person Parking Permit" for Plaintiff. Tr. at 130. Dr. Pennington checked a box indicating that Plaintiff's "[s]evere limitation in [his] ability to walk due to an arthritic, neurological, or orthopedic condition" causes him to be limited or impaired in his ability "to walk 200 feet without stopping to rest." Tr. at 130.

During a March 26, 2009 appointment with Dr. Pennington, Plaintiff was apparently using a crutch to ambulate, his left knee was swollen, and he had decreased range of motion. Tr. at 310. Plaintiff reported to Dr. Pennington that his pain was getting worse in his back and knee. Tr. at 310. Upon examination, Plaintiff had positive straight leg raises. Tr. at 310. On June 29, 2009, Plaintiff apparently told Dr. Pennington that his back pain was so severe that he thought he needed a wheelchair. Tr. at 309. X-rays of Plaintiff's left knee were taken on July 1, 2009. Tr. at 308. The results of the x-rays showed "minimal DJD [Degenerative Joint Disease]". Tr. at 313.

### 2. Dr. Lord

Plaintiff was seen by Dr. Lord on November 18, 2003, approximately five (5) years prior to Dr. Pennington's first examination of Plaintiff. Tr. at 253. Plaintiff went to Dr. Lord for a second opinion regarding surgery on his knee. Tr. at 253. Dr. Lord recommended "arthroscopic surgery for possible replacement of the loose body with internal fixation versus

more than likely with the time that has transpired, it would entail removing and drilling of the defect." Tr. at 253. Dr. Lord advised Plaintiff that the injury to his left knee was "devastating." Tr. at 253. He further advised Plaintiff that he "[wa]s likely going to have persistent symptoms but surgery is medically necessary." Tr. at 253. Then, on November 25, 2003, Plaintiff apparently declined to have the recommended surgery. Tr. at 254. Dr. Lord noted that Plaintiff "definitely understands that without having surgery that he is going to get faster progression of the arthritis in his knee and he is deciding not to pursue the surgery due to his concerns for possible surgical complications." Tr. at 254. Dr. Lord stated that Plaintiff "is allowed to work sedentary duty only due to his range of motion restriction." Tr. at 254. Plaintiff was discharged from Dr. Lord's care. See Tr. at 254.

### B. Relevant Law/Analysis

The Regulations instruct ALJs how to properly weigh the medical opinions[4] of treating physicians.[5] See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.

---

   4   "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

   5   A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, regarding the weight assigned to Dr. Pennington's opinion, the ALJ stated as follows: "The undersigned discounts Dr. [] Pennington's [RFC] assessment at Exhibit 7F, because it is not supported by the medical evidence of record. Also, the orthopedic surgeon found [Plaintiff] could do sedentary work back in 2003 (Exhibit 4F/6). Therefore, the undersigned gives Dr. Pennington's [RFC] assessment no evidentiary value." Tr. at 16.

Exhibit 7F is Dr. Pennington's "Functional Capacity Questionnaire (Physical)" dated September 30, 2008. See Tr. at 263. The ALJ's citation to exhibit 4F, page 6, and reference to "the orthopedic surgeon," makes it clear that the ALJ was referring to Dr. Lord's opinion dated November 25, 2003, rendered approximately five (5) years prior to Dr. Pennington's opinion. See Tr. at 254.

Although the ALJ cited a good cause reason for discounting Dr. Pennington's opinion in the "Functional Capacity Questionnaire (Physical)," i.e., the opinion is not supported by the medical evidence of record, mere recitation of a good cause reason without more is insufficient. Other than stating that another physician found Plaintiff could do sedentary work, the ALJ did not explain his reasoning with any specificity. Cf. Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient" when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision). As previously noted, Dr. Lord's opinion relied on by the ALJ was offered approximately five (5) years prior to Dr. Pennington's opinion. Dr. Lord only evaluated Plaintiff's knee problem; he did not evaluate Plaintiff's back pain or any other impairment. Additionally, as argued by Plaintiff, Dr. Lord's statement that Plaintiff could perform "sedentary duty" cannot be conclusively relied upon by the ALJ as equating to the same

"sedentary" work as defined in the Regulations. See SSR 96-5P, 1996 WL 374183, at *5 (stating that "[a]djudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms"). In sum, the lack of specific explanation for the ALJ's reasoning to discount Dr. Pennington's opinion frustrates judicial review.

Defendant contends in his memorandum that "[t]he ALJ properly considered and evaluated the various medical opinions regarding Plaintiff's ability to do work-related activities." Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem."), filed October 10, 2012, at 4. Defendant then provides a number of reasons why the record allegedly supports the ALJ's analysis of Dr. Pennington's opinion. Id. at 6-9. Defendant's reasons, regardless of whether they are supported by substantial evidence, cannot bolster or replace the ALJ's reasons or lack thereof. It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. See Austin v. Astrue, No. 5:07cv52/MCR/EMT, 2008 WL 2385520, at *8 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings") (citing Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994); Zblewski v. Schweiker, 732 F.2d 75, 78-79 (7th Cir. 1984); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991)).

Because the ALJ failed to articulate adequate reasons showing "good cause" for discounting the opinion of Dr. Pennington, this matter is due to be reversed and remanded.

Lewis, 125 F.3d at 1440. On remand, the Commissioner shall ensure Dr. Pennington's opinion is properly considered and assigned the appropriate weight.

## V. Conclusion

Upon review, the undersigned finds that the ALJ's analysis of Dr. Pennington's opinion frustrates judicial review. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) as incorporated by § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reevaluate the medical opinion of Dr. Pennington and state with particularity the weight afforded; if the opinion is discounted, adequate reasons showing good cause for discounting it shall be provided and shall be supported by substantial evidence;

   (B) Ensure Plaintiff's other issues raised in this appeal are appropriately addressed, if necessary; and

   (C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

Case 3:12-cv-00308-JRK   Document 20   Filed 02/15/13   Page 13 of 13 PageID 469

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on February 15, 2013.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record